# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

THOMAS E. GREENWOOD,

      Plaintiff,

vs.

TRANS UNION, LLC,

      Defendant.

No.  C19-3039-LTS

**MEMORANDUM OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

_____

## I.  INTRODUCTION

This matter is before me on a motion (Doc. 33) for summary judgment filed by defendant Trans Union, LLC (Trans Union).  Plaintiff Thomas E. Greenwood has filed a response (Doc. 42) and Trans Union has filed a reply (Doc. 47).  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.  PROCEDURAL BACKGROUND

On August 8, 2019, Greenwood filed a complaint alleging three claims against Trans Union for violating the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq*.  Doc. 1.  Greenwood alleges Trans Union willfully (or, alternatively, negligently) violated (1) several subsections of § 1681g by failing to include certain information in providing Greenwood his consumer file; (2) § 1681e(b) by incorporating unreliable credit scores into his credit report while omitting certain information from the report; and (3) § 1681i by failing to properly investigate these omissions after Greenwood disputed them.  *Id.* at 10–12.  Trans Union filed an answer (Doc. 5) on September 6, 2019, and now seeks entry of summary judgment in its favor.

### III. RELEVANT FACTS

The following facts are undisputed unless otherwise noted.

Trans Union is a consumer reporting agency (CRA) that retains credit information about consumers, including credit scores calculated by Fair Isaac Corporation (Fair Isaac) using a proprietary method. Doc. 47-1 at 1; Doc. 42-1 at 2.

In or around November 2000, Greenwood opened a credit card account with Discover Financial Services (Discover). Doc. 42-1 at 1. In or around November 2013, Discover began participating in Fair Isaac's Open Access Program. *Id.* at 1–2. Through this program, Discover shares Greenwood's Fair Isaac (or FICO) credit score with him monthly. *Id.* at 2. Discover obtains the score from Trans Union. *Id.* Greenwood contractually authorized Discover to so obtain his score. *Id.* at 3.

When Discover requests the score, Trans Union classifies Discover's request as a "soft inquiry" or "account review." *Id.* at 3–4. If an entity makes multiple "soft inquiries" or "account reviews," it is Trans Union's policy to disclose only the most recent inquiry to consumers except when responding to consumers in a handful of states. Doc. 47-1 at 9; Doc. 42-4 at 14. Trans Union had, at one time, disclosed all such inquiries to all consumers, regardless of residence. Doc. 42-4 at 15.

On or about May 14, 2018, Greenwood contacted Trans Union. Doc. 42-1 at 4. Greenwood alleges he requested a copy of his credit report. *Id.* Trans Union alleges he requested a copy of his consumer disclosure. *Id.* The document Greenwood received in response is entitled "TransUnion Personal Credit Report" and identifies, among other things, various inquiries into Greenwood's credit information, including one from Discover. *Id.* at 4–5; Doc. 47-1 at 1. On or about June 18, 2018, Greenwood sent a letter to Trans Union disputing the document's contents. Doc. 42-1 at 5. He specifically disputed the fact that the document reflects only one inquiry made by Discover, alleging that Discover inquires monthly and that the document should reflect all of those inquiries. *Id.* He requested that Trans Union update the "credit report." *Id.* Trans Union sent

2

Greenwood a letter on or about June 27, 2018, explaining the document's contents. *Id.* at 6. Greenwood did not respond to Trans Union's letter. Doc. 42-1 at 6.

On or about July 21, 2019, Greenwood again contacted Trans Union. *Id.* The parties again dispute whether he requested his credit report or a consumer disclosure. *Id.* The document Greenwood received lists one inquiry from Discover dated July 17, 2019. *Id.* Greenwood then commenced this action.

## IV. SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

3

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1377 (8th Cir. 1996).

## V.    DISCUSSION

Trans Union argues that it is entitled to summary judgment on all claims because the conduct Greenwood alleges does not violate the FCRA as matters of law. Alternatively, Trans Union argues that it is entitled to summary judgment because (1)

4

Greenwood has failed to produce sufficient evidence indicating it willfully violated the FCRA; and (2) Greenwood failed to produce sufficient evidence of the emotional distress constituting his actual injury, thus foreclosing his claim that Trans Union negligently violated the FCRA. I will address the parties' arguments claim by claim.

## A. Claim 1 – 15 U.S.C. § 1681g

Greenwood's complaint (Doc. 1) and response (Doc. 42) to Trans Union's motion for summary judgment identify three specific subsections of § 1681g(a) that Trans Union allegedly violated in disclosing Greenwood's file to him: §§ 1681g(a)(1), 1681g(a)(3) and 1681g(a)(5).[1]

### 1. Section 1681g(a)(1)

Section 1681g(a)(1) provides, in relevant part: "Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request . . . ."

#### a. The parties' arguments

Greenwood alleges Trans Union violated § 1681g(a)(1) by failing to disclose all of Discover's inquiries in responding to his requests. Doc. 1 at 10. Trans Union argues

---

[1] After the parties submitted their filings, the Supreme Court issued *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), addressing when consumers have standing under Article III of the Constitution to sue under various provisions of the Fair Credit Reporting Act (FCRA). Although neither party has raised this issue, courts have "an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). To the extent *Ramirez* addresses 15 U.S.C. § 1681g, the nature of the allegations in that case are materially different from those in this case. *Ramirez* distinguishes between plaintiffs who allege they failed to receive required information and plaintiffs who allege only that they received the required information in the wrong format. 141 S. Ct. at 2214. The plaintiffs in *Ramirez* belonged to the latter category, contributing to the Court finding they lacked standing. *Id*. Here, Greenwood alleges he failed to receive required information, causing him to try to correct his file and causing him emotional distress. Therefore, *Ramirez* does not control and I will proceed to Claim 1's merits.

Case 3:19-cv-03039-LTS-KEM   Document 48   Filed 08/10/21   Page 5 of 22

that it has complied with this section because its records of inquiries Discover made are not a part of Greenwood's file. Doc. 33-1 at 8. According to Trans Union, only information that has been furnished or could be furnished in a consumer report fall within the FCRA's definition of "file." *Id.* Discover's inquiries would not be and have not been so furnished. *Id.* Therefore, Trans Union was under no obligation to produce them in responding to Greenwood's requests. *Id.* at 9. Greenwood disagrees that a consumer's file is limited to the contents of a consumer's report, responding that Trans Union's argument relies on non-binding authority and ignores the FCRA's text and purpose. Doc. 42 at 10–11.

### b.    Analysis

The parties center their dispute on what a consumer's file entails. Courts are split on this question. Several courts agree with Trans Union's position that Greenwood's file includes only information "that might be furnished, or has been furnished, in a consumer report on" Greenwood. *Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 439 (9th Cir. 2020) (quoting *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018)); *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007) (holding similarly). Statutory construction, legislative history and Federal Trade Commission (FTC) guidance inform these courts' conclusion. First, § 1681g(a) has multiple subsections requiring CRAs to disclose different pieces of information. If § 1681g(a)(1)'s requirement to disclose "all information" truly meant all information, it would render these subsequent subsections superfluous. Second, the Senate Committee Report discussing the 1996 amendments to the FCRA provides: "Section 408 [of the bill] explicitly requires consumer reporting agencies to provide, upon request, all information in the consumer's file. The Committee intends this language to ensure that a consumer will receive *a copy of that consumer's report* . . . ." S. Rep. 104-185, at 41 (1995) (emphasis added). Finally, the FTC's commentary on § 1681g(a)(1) provided: "The term 'file' denotes all information on the consumer that is recorded and retained by a

6

consumer reporting agency that might be furnished or has been furnished, in a consumer report on that consumer."[2]  16 C.F.R. Pt. 600, App'x; *see also* Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804-01, 1990 WL 342991 (May 4, 1990).  Therefore, the contents of a consumer's file are limited to the contents of a consumer's report.[3]

However, several courts disagree with this construction of "file," relying on the FCRA's text and structure.  The FCRA provides distinct definitions to "consumer report" and "file."  *Compare* § 1681a(d) (defining "Consumer report") *with* § 1681a(g) (defining "file").  Further, some sections of the FCRA indicate that the content of a consumer report is a subset of the content of a consumer's file.  *See* § 1681i(a)(6)(B)(ii) (requiring a CRA to provide a "consumer report based upon the consumer's file" as part of conducting a reinvestigation); *Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 772–73 (11th Cir. 2006) (interpreting § 1681i(a)(6)(B)(ii) and finding the contents of a consumer's report distinct from the contents of a consumer's file); *cf. Cortez v. Trans Union, LLC*, 617 F.3d 688, 711 n.27 (3d Cir. 2010) (declining to decide whether "file" is limited to information included in a consumer report but stating that "'consumer report' is also defined in § 1681a and it is, thus, unlikely that Congress intended ['file' and

---

[2] This commentary is no longer current.  The Federal Trade Commission (FTC) rescinded this guidance in 2011 after the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, transferred much of the FTC's authority to publish guidance concerning the Fair Credit Reporting Act (FCRA) to the Consumer Financial Protection Bureau.  *See* Statement of General Policy or Interpretation; Commentary on the Fair Credit Reporting Act, 76 Fed. Reg. 44,462-01, 2011 WL 3020465 (July 26, 2011).

[3] Trans Union proceeds to argue that, because the inquiries of which Greenwood complains are not furnished in his consumer report, *see Steinmetz v. Am. Honda Fin.*, No. 2:19-CV-64 JCM (VCF), 2019 WL 4415090, at *8 (D. Nev. Sept. 16, 2019) ("[S]oft inquiries, by their very nature, are not shared with third parties."), *aff'd in relevant part, rev'd in part and remanded sub nom. Steinmetz v. Am. Honda Fin. Corp.*, 835 F. App'x 199 (9th Cir. 2020), they are not a part of his file.  Greenwood contests whether these inquiries are properly considered "soft inquiries" and whether the distinction between "soft" and "hard inquiries" matters under the FCRA, *see* Doc. 42 at 9, but it is not necessary to resolve this issue to decide this motion.

7

'consumer report'] to mean exactly the same thing") (citing *Nunnally*, 451 F.3d at 772–73). To read "file" to include only information furnished by a "consumer report" conflates what the FCRA makes distinct.

Other courts have attempted to balance the interests raised by these courts: "§ 1681g(a)(1) requires the disclosure of more than just a consumer's report but less than all the reporting agency's information . . . ." *Wimberley v. Experian Info. Sols.*, *Inc.*, No. 18 CIV. 6058 (KPF), 2019 WL 6895751, at *9 (S.D.N.Y. Dec. 18, 2019). *Wimberley* distinguishes between information related to internal record-keeping mechanisms and records "that consumers would need to 'identify inaccurate information in their credit files and correct this information.'"[4] *Id.* (quoting *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 544 (E.D. Pa. 2012)). A CRA does not need to disclose the former but does need to disclose the latter.

Finding no binding circuit precedent, I find that the content of a consumer's file is not limited as a matter of law strictly to the contents of a consumer's report. Legislative history and regulatory guidance (since rescinded) are useful but not binding. I find the FCRA's text and statutory scheme more persuasive. The FCRA itself provides distinct definitions to these terms. Conflating them renders this statutory distinction meaningless. *United States v. Belmont*, 831 F.3d 1098, 1101–02 (8th Cir. 2016) (statutes should not be construed to render words "superfluous, void, or insignificant") (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)); *see also Henson v. Santander Consumer USA, Inc.*,

---

[4] Examples of internal record-keeping mechanisms courts have excluded from files include "purge dates," "automated consumer disputer verifications (ACDVs)" and "universal data forms (UDFs)." Purge dates record the date on which information concerning a delinquent account would be removed from the consumer's report. *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). ACDVs and UDFs are internal records consumer reporting agencies use to investigate consumer disputes. *Wimberly v. Experian Info. Sols., Inc.*, No. 18 CIV. 6058 (KPF), 2019 WL 6895751, at *7 (S.D.N.Y. Dec. 18, 2019). In contrast, courts have found information such as an alert identifying a consumer as being subject to Treasury Department sanctions to be a part of his or her file even if it is absent from his or her report. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711–12 (3d Cir. 2010).

8

137 S. Ct. 1718, 1723 (2017) ("[W]e presume differences in language . . . convey differences in meaning.") (citing *Loughrin v. United States*, 134 S. Ct. 2384, 2391 (2014)). I also must construe the statute as a whole and, in so doing, find it important that the FCRA elsewhere prescribes consumer reports to be based upon the consumer's file. *See* § 1681i(a)(6)(B)(ii); *Nunnally*, 451 F.3d at 772–73; *Martin v. Fayram*, 849 F.3d 691, 696 (8th Cir. 2017) (statutory schemes help clarify the meanings of words or phrases, "such as when the same terminology is used elsewhere in a context that makes its meaning clear") (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). Limiting the content of a consumer's file to the content of a consumer's report conflates terms that the FCRA treats as distinct, definitionally and in operation. Therefore, I disagree with Trans Union that Greenwood's file does not include these inquiries as a matter of law.

### 2. Section 1681g(a)(3)

Section 1681g(a)(3)(A)(ii) provides, in relevant part: "Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [i]dentification of each person . . . that procured a consumer report . . . during the 1-year period preceding the date on which the request is made."

#### a. The parties' arguments

Greenwood alleges Trans Union violated § 1681g(a)(3)(A)(ii) by failing to disclose all of Discover's inquiries. Doc. 1 at 4, 10. Trans Union argues that it complied with this section by identifying Discover as a "person" who procured Greenwood's consumer report during the 1-year period preceding Greenwood's request.[5] Doc. 33-1 at 9. Although it did not disclose every one of Discover's inquiries, Trans Union argues that

---

[5] "The term 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b).

all that § 1681g(a)(3)(A)(ii) requires is the identification of the procuring person.  *Id.*  Greenwood's response fails to address Trans Union's argument.  It does not refer to, let alone discuss, § 1681g(a)(3).  Trans Union replies that, by failing to respond to its motion concerning § 1681g(a)(3), Greenwood waives this claim.  Doc. 47 at 6–7.

### b.    Analysis

"[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."  *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009).  "[T]he non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment."  *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir.) (citing *id.*), *cert. denied*, 141 S. Ct. 894 (2020).  Greenwood's abandonment of this claim entitles Trans Union to summary judgment on it.

Nevertheless, I will briefly address the claim's merits.  Section 1681(g)(a)(3)(A)(ii)'s plain text requires CRAs disclose the identities of persons who procured a consumer's report within the previous year.  It does not require the CRA to disclose how many times each person procured the report.  By identifying Discover as a person procuring Greenwood's consumer report during the 1-year period preceding Greenwood's request, Trans Union complied with this subsection.  Therefore, and in the alternative, Trans Union is entitled to summary judgment on this claim's merits.

### 3.    1681g(a)(5)

Section 1681g(a)(5) provides, in relevant part:

> Every consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer.

10

### a. The parties' arguments

Greenwood alleges Trans Union violated § 1681g(a)(5) by failing to disclose all of Discover's inquiries. Doc. 42 at 7–8. He first raises this allegation in responding to Trans Union's motion for summary judgment. Trans Union replies that this allegation is not properly before the court because Greenwood failed to allege it in his complaint. Doc. 47 at 7–8; *see also* Doc. 1 at 4 (referring only to §§ 1681g(a)(1) and 1681g(a)(3)). Trans Union also states that even if Greenwood had properly pleaded this claim, it would fail as a matter of law because (1) the FCRA excludes such inquiries from the meaning of a "credit or insurance transaction that was not initiated by the consumer;" and, alternatively, (2) the omitted inquiries result from a transaction initiated by Greenwood. Doc. 47 at 8–10.

### b. Analysis

Trans Union is correct that Greenwood improperly raises this theory of liability for the first time in response to Trans Union's summary judgment motion. *Sage as Tr. for Sage v. Bridgestone Americas Tires Operations, LLC*, --- F. Supp. 3d ----, 2021 WL 195797, at *3 (D. Minn. Jan. 20, 2021) ("In considering a summary judgment motion, the court may 'disregard[ ] a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard.'") (quoting *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 878 (8th Cir. 2020)); *Farmer v. Dormire*, No. 03-4180-CV-C-NKL, 2005 WL 2372146, at *5 (W.D. Mo. Sept. 27, 2005) ("It is not proper to inject new issues for the first time in response to summary judgment."). Therefore, it would be proper to give no further consideration to this claim.

Even if Greenwood had properly pleaded this claim, Trans Union would be entitled to summary judgment. Section 1681g(a)(5) requires disclosure of inquiries related to transactions not initiated by the consumer. The FCRA distinguishes between consumer-initiated and non-consumer-initiated transactions as part of its goal of deterring unrequested credit checks. *Bickley v. Dish Network, LLC*, 751 F.3d 724, 732 (6th Cir.

11

2014) (analyzing § 1681b(a)(3)(F)(i)'s language of "business transaction that is initiated by the consumer"). In evaluating whether a transaction is consumer-initiated, courts consider whether the party accessing the report is doing so to benefit the consumer (for example, to effectuate the extension of credit). *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 817 (W.D. Ky. 2003). Temporal considerations also matter – a consumer initiating a transaction at one point in time does not authorize a creditor to continue accessing his or her report. *Id.*; *see also Stergiopoulos v. First Midwest Bancorp., Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005) ("A third party cannot troll for reports, nor can it request a report on a whim. Rather, there must be a direct link between a consumer's search for credit and the bank's credit report request.").

There is no genuine dispute that the inquiries in question are a result of an ongoing credit transaction initiated by Greenwood. Greenwood argues that he did not initiate the inquiries but the FCRA considers whether the consumer initiated the transaction. He sought credit from and entered into an agreement with Discover to provide him a revolving line of credit. Doc. 42-1 at 1. As part of this ongoing transaction, Discover began providing him credit scores it obtained from Trans Union. *Id.* at 2; *see also In re Murphy*, 190 B.R. 327, 331 (Bankr. N.D. Ill. 1995) ("Credit card cases involve an ongoing relationship between the holder and issuer . . . .") (quoting *In re Hinman*, 120 B.R. 1018, 1021 (Bankr. D.N.D. 1990)). Greenwood admits that his contractual relationship with Discover authorizes Discover to obtain his FICO score from Trans Union. Doc. 42-1 at 3; Doc. 33-8 at 2. Discover is not trolling for reports or randomly selecting Greenwood to run an inquiry. Thus, these inquiries fall outside of § 1681g(a)(5)'s scope. Even if Greenwood had properly pleaded this claim, Trans Union would be entitled to summary judgment on its merits.

## B.    Claim 2 – 15 U.S.C. § 1681e(b)

Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

### 1.    The parties' arguments

Greenwood alleges Trans Union violated § 1681e(b) in two ways.  First, he alleges that FICO credit scoring is unreliable and Trans Union failed to follow reasonable procedures to assure his credit score's accuracy.  Doc. 1 at 10–11.  Second, he alleges that Trans Union failed to follow reasonable procedures by selling his credit report "without all the information being included such as the complete list of its subscribers who obtained and used [Greenwood]'s report."[6]  *Id.* at 11.

Trans Union responds that Greenwood's first sub-claim fails because the FICO credit scores to which Greenwood refers are produced by Fair Isaac, not Trans Union. Doc. 33-1 at 10.  It argues it cannot be liable under § 1681e(b) for reporting information it receives from other agencies.  *Id.*  Trans Union also argues that credit scores are not considered items of information under the FCRA.  *Id.*  Finally, Trans Union argues that it is entitled to summary judgment on this sub-claim because Greenwood fails to identify any consumer report containing allegedly inaccurate information.  Greenwood bases his allegations off the content of consumer disclosures, a kind of document distinct from a report, that Trans Union provided him.  *Id.* at 11.  In response to the second sub-claim, Trans Union argues that it is entitled to summary judgment because Greenwood fails to show that Trans Union transmitted the allegedly inaccurate report to third parties.  *Id.* at 11–12.

---

[6] I understand Greenwood to be referring to Trans Union's alleged failure to disclose every one of Discover's inquiries in the documents it provided him.

Greenwood's response fails to address Trans Union's arguments. It does not mention, let alone discuss, § 1681e(b). *See, e.g.*, Doc. 42 at 2 ("Defendant's Motion for Summary Judgment as to Plaintiff's Section 1681g and 1681i claims should be denied in its entirety."). Trans Union replies that, by failing to respond to its motion concerning Claim 2, Greenwood waives this claim. Doc. 47 at 3–4.

### 2.  *Analysis*

"[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher*, 558 F.3d at 735. "[T]he non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment." *Paskert*, 950 F.3d at 540. Greenwood's abandonment of Claim 2 entitles Trans Union to summary judgment.[7]

---

[7] Had Greenwood pursued this claim, whether he would have Article III standing to do so would be at issue. In *Ramirez*, the Supreme Court held that a plaintiff must demonstrate that the defendant consumer reporting agency transmitted the plaintiff's credit report in order to have standing to pursue a claim under § 1681e(b). 141 S. Ct. at 2212–13. Greenwood alleged in his complaint that Trans Union sold his allegedly inaccurate credit report to various creditors. Doc. 1 at 11. But in response to Trans Union's request for admissions, he indicates only that he "believes that the same inaccurate representation of credit inquiries provided to him *may* have been provided to other third parties." Doc. 33-7 at 19 (emphasis added). As part and parcel of Greenwood's failure to respond to Trans Union's argument regarding this second claim, he fails to argue, let alone cite to supporting evidence, that Trans Union actually transmitted his allegedly inaccurate consumer report.

The elements of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Balogh v. Lombardi*, 816 F.3d 536, 541 (8th Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "[B]ecause allegations alone are insufficient to survive a summary judgment motion, a plaintiff at this later stage of the litigation process must 'set forth by affidavit or other evidence specific facts, which for the purposes of the summary judgment motion will be taken as true.'" *Constitution Party of S. Dakota v. Nelson*, 639 F.3d 417, 421 (8th Cir. 2011) (quoting *Lujan*, 504 U.S. at 561). Greenwood does not present evidence sufficient to survive summary judgment on his claim that Trans Union transmitted his allegedly inaccurate credit report, as he does not go beyond the allegation in his pleadings. Therefore, Greenwood has failed to demonstrate that he suffered

## C.    Claim 3 – 15 U.S.C. § 1681i

Section 1681i(a)(1)(A) provides:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

### 1.    The parties' arguments

Greenwood alleges he disputed the completeness of his Trans Union file related to Discover's inquiries and requested Trans Union conduct a reinvestigation. Doc. 1 at 11. He alleges that this request provided actual notice to Trans Union that the disputed information was inaccurate but that Trans Union failed to reinvestigate. *Id.* at 12. Trans Union argues that this claim fails because these inquiries are not a part of Greenwood's file. Doc. 33-1 at 12–13. Alternatively, Trans Union argues that the claim fails because Greenwood does not allege that any of the reported information was inaccurate. Greenwood alleges only that Trans Union omitted information from his file and alleging omissions does not trigger Trans Union's obligations under § 1681i. *Id.* at 13. Greenwood responds that the inquiries he disputes are a part of his consumer file, that his request triggered Trans Union's duty to reinvestigate and that Trans Union failed to do so in violation of the FCRA. Doc. 42 at 12–13.

---

concrete harm as a result of Trans Union's alleged violations of § 1681e(b) and thus would lack standing to pursue this claim. *Ramirez*, 141 S. Ct. at 2212.

## 2. Analysis

A consumer must dispute an item of information reported in his or her file to trigger § 1681i:

> A CRA's duty to reinvestigate under § 1681i(a)(1)(A) is not—as [the plaintiff] argues—triggered by a consumer's complaint that 'his file' is not complete or accurate. Instead, it is triggered by a consumer's complaint that 'any item of information contained in [his] file' is not complete or accurate.

*Desautel v. Experian Info. Sol., LLC*, No. 19-CV-2836 (PJS/LIB), 2020 WL 2215736, at *4 (D. Minn. May 7, 2020) (citing § 1681i(a)(1)(A)) (second alteration in original); *see also Norman v. Trans Union, LLC*, 479 F. Supp. 3d 98, 115 (E.D. Pa. 2020) ("In other words, an agency would have no duty to reinvestigate under § 1681i(a)(1)(A) if a consumer complained, for instance, that his file *in toto* was somehow incomplete or inaccurate, or that some item of information should have been included but was not."); *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1102 (D. Minn. 2011) ("The weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail.") (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)) (collecting cases).

Greenwood challenges the alleged completeness or accuracy of the file itself, specifically that it omits Discover's inquiries: "There is no dispute that Plaintiff sent, and Defendant received his dispute letter wherein he asked Defendant to investigate the *missing* Discover inquiries, provide an explanation, and update his consumer file or 'credit report' to *reflect all inquiries*." Doc. 42 at 12 (emphasis added). He does not allege any item of information reported in the file to be inaccurate. By alleging omissions, his claim falls outside of § 1681i's purview, as he fails to dispute the accuracy or completeness of the information his file does report. For these reasons, Trans Union is entitled to summary judgment on Claim 3.

For the reasons set out above, Trans Union is entitled to summary judgment on all of Greenwood's claims except his claim under § 1681g(a)(1). As for that claim, Trans

Union argues summary judgment is nonetheless appropriate because Greenwood has failed to produce evidence sufficient to support a finding that Trans Union willfully or negligently violated the FCRA. Doc. 33-1 at 14–16.

### D.     *Willful noncompliance*

#### 1.     *The parties' arguments*

Greenwood alleges Trans Union acted willfully in violating the FCRA, thus entitling him to statutory and punitive damages. Doc. 1 at 10–12. Trans Union responds that Greenwood has presented no evidence that it deliberately violated or recklessly disregarded its obligations under the FCRA. Doc. 33-1 at 16. Greenwood responds that a genuine issue of material fact exists because there is evidence that Trans Union's policy as to what information it discloses is based on its own convenience rather than the FCRA. Doc. 42 at 14–15. Trans Union replies that its disclosure policy is based on a reasonable interpretation of its obligations under the FCRA. Doc. 47 at 14.

#### 2.     *Analysis*

"To show willful noncompliance with the FCRA, [the plaintiff] must show that [the defendant] knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (quoting *Cushman v. Trans Union Corp.*, 115 F.3d 220, 226 (3d Cir. 1997)) (internal quotation marks omitted) (alterations in original); *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1245 (D. Minn. 2013) (holding that affirmative evidence of conscious disregard of the FCRA or deliberate action to violate it is necessary to survive summary judgment on a willful non-compliance claim). "Courts have generally found willful violations in cases where CRAs have intentionally misled consumers or concealed information from them." *Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1117 (D. Minn. 2004) (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001)). At minimum, a willful violation

17

requires the CRA to have an objectively unreasonable reading of the FCRA's requirements.[8] *Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 892 (D. Minn. 2019) (citing *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 69 (2007)).

Regarding inquiries such as Discover's, Trans Union representative Keith McCawley testified that Trans Union discloses only the most recent inquiry to consumers, other than consumers living in a handful of states. Doc. 42-4 at 14. He explained that this policy is based on the language of the FCRA and the language of state-specific statutes. *Id.* at 15. He testified that Trans Union had previously disclosed all such inquiries to all consumers. *Id.* He testified that the impetus for changing the policy was to accommodate a "size limitation" on the number of inquiries Trans Union could produce. *Id.* at 16. Greenwood argues that this testimony creates a genuine question of material fact as to willfulness because McCawley attributed Trans Union's disclosure policy to a decision Trans Union made for its convenience as opposed to compliance with the FCRA. Doc. 42 at 14–15.

This is incorrect. While the testimony indicates that Trans Union changed its policy to accommodate a size limitation, it is not affirmative evidence that Trans Union was consciously disregarding its obligations under the FCRA in so doing. A CRA may switch between two policies while believing both comply with its statutory obligations. Indeed, McCawley's testimony indicates that Trans Union believes its current policy remains "based on" the FCRA. *Id.* at 15. There is no indication that a desire to mislead consumers or to hide this information from them motivated the change. Indeed, as discussed above, significant authority supports Trans Union's understanding of its obligations under § 1681g(a)(1). While I take issue with this understanding, it is far from

---

[8] In assessing whether a party's reading of a statute is objectively unreasonable, courts consider whether the reading is grounded in the statutory text and whether there is guidance from circuit courts or regulatory agencies. *Beseke*, 420 F. Supp. 3d at 892 (quoting *Hammer v. Sam's E., Inc.*, 754 F.3d 492, 501 (8th Cir. 2014), *abrogated on other grounds by Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

an objectively unreasonable one. No reasonable jury could find Trans Union willfully violated § 1681g(a)(1) in failing to disclose all of Discover's inquiries to Greenwood.

## E.     Negligent noncompliance

### 1.     The parties' arguments

Greenwood alleges Trans Union acted negligently in violating the FCRA and thus he is entitled to actual damages due to suffering mental and emotional distress, anguish, frustration and anxiety.[9] Doc. 1 at 10–12. Trans Union argues that Greenwood fails to provide sufficient evidence supporting these alleged damages. Doc. 33-1 at 15. Greenwood responds that he provided sufficient evidence through testimony and in response to Trans Union's interrogatories to create a jury question on actual damages resulting from emotional distress. Doc. 42 at 16. Trans Union replies that Greenwood's evidence is vague and conclusory. Doc. 47 at 13.

### 2.     Analysis

To state a claim of negligent noncompliance under the FCRA, a consumer must allege actual damages. *Johnson v. Collecto, Inc.*, 127 F. Supp. 3d 1012, 1018 (D. Minn. 2015) ("In the absence of [actual] damages, . . . an FCRA negligence claim fails."). Emotional distress damages may constitute actual damages but a plaintiff must support his or her allegations with competent evidence of "genuine injury." *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 828 (8th Cir. 2013) (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). In judging whether a plaintiff has put forward sufficient evidence of emotional distress to survive summary judgment, courts consider, among other things,

---

[9] Greenwood also alleges Trans Union's conduct harmed his credit score, although he pleaded this injury as distinct from his actual injuries. Doc. 1 at 10. He later admits that he does not claim any economic damages "but rather only damages for emotional distress." Doc. 42-1 at 8. Regardless, he produces no evidence, let alone evidence sufficient to survive summary judgment, that Trans Union's conduct harmed his credit score.

whether the individual's emotional distress resulted in physical injury, whether the individual received medical treatment for psychological or emotional injury, whether other individuals can corroborate the plaintiff's injury and the amount of detail the individual provides as the nature and length of the injury.

For example, summary judgment has been denied when a plaintiff offered "considerable context for his emotional distress, including a description of how he worked hard to restore his credit . . . and his anger and frustration when the obsolete information continued to be reported . . . ." *Beseke*, 420 F. Supp. 3d at 903. Other plaintiffs have survived summary judgment after testifying about "a months-long period of stress and anxiety" and providing a corroborating declaration from a family member, *Hrebal v. Seterus*, 598 B.R. 252, 273 (D. Minn. 2019), or after setting forth evidence of suffering from physical maladies resulting from emotional distress (such as inability to sleep and anxiety) for "much more than a 'brief'" period. *Johnson*, 127 F. Supp. 3d at 1018. On the other hand, conclusory allegations of emotional distress will not survive summary judgment. *See, e.g.*, *Dao v. Cellco P'ship*, No. 14-1219 (JRT/BRT), 2015 WL 7572304, at *5 (D. Minn. Nov. 24, 2015) (granting defendant's motion for summary judgment where plaintiff "generally assert[ed] that he suffered from emotional distress" but "conceded that he ha[d] not seen a medical doctor, psychiatrist, psychologist, mental health professional, spiritual advisor, or counselor; incurred any expenses related to treatment; or missed any work"); *Saumweber v. Green Tree Serv., LLC*, No. 13-CV-03628 SRN/SER, 2015 WL 2381131, at *7 (D. Minn. May 19, 2015) (granting defendant's motion for summary judgment after plaintiffs "merely repeat[ed]" conclusory allegations of emotional distress from their complaint).

Greenwood's complaint alleges suffering mental and emotional distress, anger, anguish, anxiety, frustration and worry. Doc. 1 at 10–12. He repeats these allegations in responding to interrogatories. Doc. 33-7 at 2–4. But in response to an interrogatory inviting him to detail the nature of these conditions, and whether he sought out treatment for them, he merely points to a previous answer listing the conditions. *Id.* at 4–5. He

20

later testified that his responses to Trans Union's interrogatories were "accurate and *complete*." Doc. 33-8 at 6–7 (emphasis added). He admits that he has not been examined by any medical professional, counselor or spiritual advisor as a result of Trans Union's conduct, nor has he incurred any expenses related to these conditions. Doc. 33-7 at 16–17. He provides no declarations corroborating his suffering these conditions. While he asserts that he testified about the nature of his emotional distress during his deposition, Doc. 42 at 16, he fails to cite to such testimony and I find no evidence in the record detailing the nature and length of his alleged conditions.

All told, Greenwood has done little more than repeat his complaint's allegations. Because he has not provided competent evidence of the alleged emotional distress constituting his actual damages, he fails to state an FCRA negligent noncompliance claim. Trans Union is entitled to summary judgment on Greenwood's claim that Trans Union negligently violated § 1681g(a)(1).

## VI.  CONCLUSION

For the reasons set forth herein:

1.      Trans Union's motion (Doc. 33) for summary judgment is **granted** in its entirety.

2.      Because this order disposes of all claims, judgment **shall enter** in favor of Trans Union and against Greenwood.

3.      The trial of this case, currently scheduled to begin November 8, 2021, is hereby **canceled**.

4.      The Clerk of Court shall **close this case**.

**IT IS SO ORDERED.**

**DATED** this 10th day of August, 2021.

 

 

_____

Leonard T. Strand, Chief Judge